SLIP OP 12 - 47

UNITED STATES COURT OF INTERNATIONAL TRADE

MACLEAN-FOGG COMPANY, *et al.*,

       Plaintiffs,

          v.

UNITED STATES,

       Defendant.

Before: Donald C. Pogue,
        Chief Judge

Consol. Court No. 11-00209

## OPINION

[Commerce's all-others countervailing duty rate REMANDED.]

Dated: April 4, 2012

    <u>Mark B. Lehnardt</u>, Lehnardt & Lehnardt LLC, of Liberty, MO, for the Plaintiff-Intervenors Eagle Metal Distributors, Inc. and Ningbo Yili Import and Export Co., Ltd.

    <u>Craig A. Lewis</u>, <u>Theodore C. Weymouth</u>, and <u>Brian S. Janovitz</u>, Hogan Lovells US LLP, of Washington, DC, for the Plaintiff-Intervenor Evergreen Solar, Inc.

    <u>Thomas M. Keating</u>, and <u>Lisa M. Hammond</u>, Hodes, Keating and Pilon, of Chicago, IL, for Plaintiffs Maclean-Fogg Co. and Fiskars Brands, Inc.

    <u>Tara K. Hogan</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for the Defendant.  With her on the briefs were <u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director; and <u>Reginald T. Blades Jr.</u>, Assistant Director.  Of counsel on the briefs were, <u>Joanna Theiss</u>, Office of the Chief Counsel for Import Administration, United States Department of Commerce, and

    <u>Stephen A. Jones</u>, <u>Christopher T. Cloutier</u>, <u>Daniel L. Schneiderman</u>, <u>Gilbert B. Kaplan</u>, <u>Joshua M. Snead</u>, and <u>Patrick J. Togni</u>, King and Spalding LLP, of Washington, DC, for the Defendant-Intervenor Aluminum Extrusions Fair Trade Committee.

**Pogue, Chief Judge**: In this action, Plaintiffs, four domestic importers and one exporter of extruded aluminum, challenge the all-others countervailing duty ("CVD") rate set by the Department of Commerce ("the Department" or "Commerce") in its investigation of their goods imported from the People's Republic of China.  We have jurisdiction under Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. 1516a(a)(2)(B)(i)(2006)[1] and 28 U.S.C. § 1581(c).

After a brief review of the relevant background and applicable standard of review, the court will explain why it concludes that Commerce has not presented, for its rate choice, a logical basis or explanation which considers the important aspects of the problem presented.  Accordingly, the all-others rate is remanded for reconsideration.

BACKGROUND

This case arises from Commerce's initiation of companion CVD and antidumping ("AD") investigations into various Chinese exporters and producers of aluminum extrusions.[2]  See <u>Aluminum</u>

---

[1] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

[2] The merchandise covered by the investigation are aluminum shapes and forms created by the extrusion process and made from aluminum alloys which correspond to the Aluminum Association designations beginning with the numbers 1, 3, or 6.  <u>Final Determination</u>, 76 Fed. Reg. at 18,521.  These forms are produced in a variety of shapes, ranging from solid to hollow profiles in

Extrusions from the People's Republic of China, 75 Fed. Reg.
22,114 (Dep't Commerce Apr. 27, 2010) (Initiation of
Countervailing Duty Investigation) ("CVD Initiation").  Because
Commerce's investigation involved 114 potential
exporter/producers ("respondents"), Aluminum Extrusions from the
People's Republic of China, 76 Fed. Reg. 18,521 (Dep't Commerce
Apr. 4, 2011) (Final Affirmative Countervailing Duty
Determination) ("Final Determination") and accompanying Issues
and Decision Memorandum ("I&D Memo") at Comment 10 (Mar. 28,
2011), Commerce initially selected the three largest respondents
by volume as mandatory respondents.[3]  However, none of these

---

pipes, tubes, bars, and rods.  They may also be prepared for
assembly by being cut-to-length, machined, drilled, punched,
notched, bent, stretched, knurled, swedged, mitered, chamfered,
threaded, and spun.  Id.

   [3] Where there is such a large number of potential
respondents, the statute permits Commerce to select either a
statistically valid set of exporters and producers or those that
are the largest by volume.  See 19 U.S.C. § 1677f-1(e)(2):

> If the administering authority determines that it is not
> practicable to determine individual countervailable subsidy
> rates under paragraph (1) because of the large number of
> exporters or producers involved in the investigation or
> review, the administering authority may--
>
> (A) determine individual countervailable subsidy rates for a
> reasonable number of exporters or producers by limiting its
> examination to--
>
> > (i) a sample of exporters or producers that the
> > administering authority determines is statistically
> > valid based on the information available to the

three mandatory respondents responded to Commerce's initial
questionnaire.  See Respondent Selection Memorandum at 4, May 18,
2010, ECF No. 39, Tab D (citing 19 U.S.C. § 1677f-1(e)(2))
("Respondent Selection Memo"); I&D Memo, Section VI at 5.
Commerce therefore found that these mandatory respondents
"withheld requested information and significantly impeded [the]
proceeding."  I&D Memo, Section VI.  Commerce further found that
because the three mandatory respondents failed to act to the best
of their abilities in the investigation, an adverse inference was
warranted, such that Commerce would use adverse facts available
("AFA") in calculating their countervailing duty rate.  Commerce
intended to calculate an AFA rate to ensure the mandatory
respondents did not obtain a more favorable rate than if they had
cooperated with Commerce's request for information.  Id. (relying
on and citing 19 U.S.C. § 1677e(b)).

Accordingly, and citing its longstanding practice, in
calculating, for the three mandatory respondents, an AFA CVD

administering authority at the time of selection, or

(ii) exporters and producers accounting for the largest
volume of the subject merchandise from the exporting
country that the administering authority determines can
be reasonably examined; or

(B) determine a single country-wide subsidy rate to be
applied to all exporters and producers.")

rate, <u>Final Determination</u>, 76 Fed. Reg. at 18,523,[4] Commerce

selected the "highest calculated rate in any segment of the

proceeding."  <u>Aluminum Extrusions from the People's Republic of</u>

<u>China</u>, 75 Fed. Reg. 54,302, 54,305 (Dep't Commerce Sep. 7, 2010)

(preliminary affirmative countervailing duty determination)

("<u>Preliminary Determination</u>") (citing <u>Laminated Woven Sacks From</u>

<u>the People's Republic of China: Final Affirmative Countervailing</u>

<u>Duty Determination and Final Affirmative Determination, in Part,</u>

<u>of Critical Circumstances</u>, 73 Fed. Reg. 35,639 (Dep't Commerce

June 24, 2008)).  More specifically, Commerce typically uses the

highest program-specific rates calculated for cooperating

respondents in the current or in prior CVD proceedings.  Here,

Commerce used the "highest calculated subsidy rate for any

program otherwise listed that could conceivably be used by the

non-cooperating companies" and arrived at a final rate of 374.15%

for each of the three mandatory respondents.[5]  <u>Id.</u> at 54,305;

<u>Final Determination</u>, 76 Fed. Reg. at 18,523.

     Two other companies submitted responses and were chosen by

---

     [4] Commerce, pursuant to its statutory mandate, uses
information derived from the petition, final determination, any
previous review or determination and/or any other information
placed on the record.  <u>Preliminary Determination</u>, 75 Fed. Reg. at
54, 304 (citing 19 U.S.C. § 1677e(b) and 19 C.F.R.
§ 351.308(c)(1) and (2).

     [5] In its preliminary determination, Commerce calculated an
AFA rate of 137.65%.  Preliminary Determination, 75 Fed. Reg. at
54,320-21.

Commerce to participate in the investigation as voluntary respondents:  Zhaoqing New Zhongya Aluminum Co., Ltd., Zhongya Shaped Aluminum HK Holding Ltd., and Karlton Aluminum Company Ltd. (collectively "Zhongya") and Guang Ya Aluminum Industries Co., Ltd., Foshan Guangcheng Aluminum Co., Ltd., Guang Ya Aluminum Industries Hong Kong, Kong Ah International Company Limited, and Yongji Guanghai Aluminum Industry Co., Ltd. (collectively "Guang Ya").  In the final determination, Commerce issued a final CVD rate of 8.02% *ad valorem* for Zhongya, and 9.94% *ad valorem* for Guang Ya.  Final Determination, 76 Fed. Reg. at 18,522-23.[6]

Having calculated rates for the mandatory and voluntary respondents, Commerce then calculated the CVD rate for the remaining "all-other" respondents, arriving at a rate of 374.15%. Final Determination, 76 Fed. Reg. at 18,822-23.  This rate is identical to and calculated as a weighted average of the AFA rates Commerce issued for the three non-cooperating mandatory respondents.  In choosing to use the weighted average of the rates determined for the mandatory respondents, Commerce excluded the rates calculated for the voluntary respondents.  In doing so, Commerce relied on 19 C.F.R. § 351.204(d)(3) which permits

---

[6] Unlike the AFA rate, the final voluntary respondents' rates did not differ significantly from the preliminary rates, which were 10.37% *ad valorem* and 6.18% *ad valorem* respectively. See Preliminary Determination, 75 Fed. Reg. at 54,321.

Commerce to exclude any rates calculated for voluntary respondents when calculating the all-others rate.  I&D Memo, Section XI, Comment 9 at 54; 19 C.F.R. § 351.204(d)(3).

Plaintiffs allege that when averaging rates to calculate the all-others rate, Commerce's decision to omit any rates calculated for voluntary respondents is expressly prohibited by the governing statute, 19 U.S.C. § 1671d(c)(5)(A)(i)-(ii) ("section 1671d").  Plaintiffs also contend that 19 C.F.R. § 351.204(d)(3) is invalidly promulgated in light of the alleged lack of ambiguity of the statute.  Finally, Plaintiffs assert that Commerce's chosen methodology is unreasonable and not supported by substantial evidence.

## STANDARD OF REVIEW

When reviewing Commerce's "determinations, findings or conclusions" in a countervailing duty investigation, the Court determines whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence is evidence which, considering the record as a whole, "a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477, 491 (1951) (citing Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  In presenting its findings, the agency must explain its standards and "rationally connect them to the conclusions drawn from the

record." <u>U.S. Steel Corp. v. United States</u>, Slip Op. 10-104,

2010 Ct. Intl. Trade LEXIS 107 (CIT Sep. 13, 2010) at *4 (citing

<u>Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut.</u>

<u>Auto. Ins. Co.</u>, 463 U.S. 29, 43(1983); <u>Matsushita Elec. Indus.</u>

<u>Co. v. United States</u>, 750 F.2d 927, 933 (Fed. Cir. 1984)).  The

conclusion Commerce reaches need not be the best or only possible

conclusion, merely a reasonable one.  <u>See</u> <u>Lifestyle Enterprise,</u>

<u>Inc. v. United States</u>, Slip-Op 11-16, 2011 WL 637667 at *10 (CIT

Feb. 11, 2011).

### DISCUSSION

Because Plaintiffs' first two claims are related, the court

will consider them in Part A below, and then turn to Plaintiffs'

remaining claim in Part B.

### A.

Plaintiffs first raise a straightforward <u>Chevron</u> challenge,[7]

---

[7] Under this familiar standard, when the court reviews an
agency's statutory interpretation, it must first determine
whether Congress "has directly spoken to the precise question at
issue." <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council,</u>
<u>Inc.</u>, 467 U.S. 837, 842 (1984).  If Congress has clearly
expressed its intent on the issue, then the court must give
effect to this unambiguous intent. <u>Chevron</u>, 467 U.S. at 842-43.
If the court finds that "the statute is silent or ambiguous with
respect to the specific issue, the question for the court is
whether the agency's interpretation is based on a permissible
construction of the statute." <u>Id.</u> at 843.  In this "second step"
review, the court must look to the structure and language of the
statute as a whole. <u>K Mart Corp. v. Cartier, Inc.</u>, 486 U.S. 281,
291 (1988); <u>Sullivan v. Everhart</u>, 494 U.S. 83, 89 (1990).  If it

asserting that section 1671d unambiguously requires that the all-others rates be based on all "individually investigated" respondents and therefore Commerce erred by excluding voluntary respondents from the calculation of the all-others rate.

Section 1671d states, in relevant part:

[T]he all-others rate shall be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervailable subsidy rates, and any rates determined entirely under section 1677e.[8]

If the countervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish an all-others rate for exporters and producers not individually investigated, including averaging the weighted average countervailable subsidy rates determined for the exporters and producers individually investigated.

19 U.S.C. § 1671d(c)(5)(A)(i)-(ii).

---

determines that the agency's interpretation is reasonable, then the court must uphold that interpretation, even if the court does not believe it to be the best statutory interpretation. Adair v. United States, 497 F.3d 1244, 1252 (Fed. Cir. 2007) (citing Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 980 (2005)); Chevron, 467 U.S. at 842-43; Zenith Radio Corp. v. United States, 437 U.S. 443, 450 (1978).

[8] Section 1677e refers to rates for the mandatory respondents that are calculated, as here, with adverse facts available. 19 U.S.C. § 1677(e).

Plaintiffs assert that the statute is unambiguous and clearly refers to all individually investigated respondents, whether mandatory or voluntary.  They urge the court to read the statute as establishing only two distinct categories of respondents: those that are individually investigated and those that are not.  Plaintiffs' Br. at 17, Oct. 31, 2011, ECF No. 29 (referring to 19 U.S.C. § 1671d(c)(5)(A)(i)).

But the statute does not say "all."  Nor does the statute clearly specify which particular subset of respondents Commerce is to rely upon when setting the all-others rate.  While section 1671d does refer to "individually investigated" respondents, Congress does not define "individually investigated" as used in 19 U.S.C. § 1671d(c)(5)(A)(i)-(ii), <u>see</u> 19 U.S.C. § 1202 *et seq*, and the statutory language does not articulate the exact sources from which Commerce is required to extract data when making its calculations.

Plaintiffs contend that because Congress did not differentiate between mandatory and voluntary respondents in section 1671d, but did so in other portions of the statute, it must have intended all individually investigated respondents, whether mandatory or not, to be encompassed by the statutory language.  Plaintiff's Br. at 17.

Plaintiffs are correct insofar as they claim that the court

is to read a statutory provision in the context of the statute as
a whole.  See Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)
("The plainness or ambiguity of statutory language is determined
by reference to the language itself, the specific context in
which that language is used, and the broader context of the
statute as a whole."). But the statute as a whole includes
another provision, 19 U.S.C. § 1677f-1(e), which at least
suggests that Congress intended for Commerce to, in some
reasonable way, use rates from mandatory respondents when
calculating the all-others rate under section 1671d.  See 19
U.S.C. § 1677f-1(e).  Section 1677f-1(e) states that when there
are too many importers or producers to make it practical for
Commerce to set individual CVD rates, "individual countervailable
subsidy rates determined under subparagraph (A) shall be used to
determine the all-others rate under section 1671d(c)(5)."
Subparagraph (A) sets forth the process by which Commerce selects
mandatory respondents.  19 U.S.C. § 1677f-1(e).  In light of this
provision, Plaintiffs' contention that section 1671d
unambiguously refers to all individually investigated
respondents, whether mandatory or voluntary, fails.  See Union
Steel v. United States, __ CIT __, Slip Op. 12-24 (Feb. 27, 2012)
at *17-19 (holding that the term "weighted average dumping
margin" is not so specific as to require a particular
calculation).  Rather, Commerce correctly concludes that the

statute is ambiguous.  <u>Antidumping Duties; Countervailing Duties</u>,
62 Fed. Reg. 27,296, 27,351 (Dep't Commerce May 19, 1997) (Final
Rule) ("<u>Preamble</u>").

In their second and related claim, Plaintiffs assert that
because section 1671d is unambiguous, Commerce therefore
invalidly promulgated and relied on 19 C.F.R. § 351.204(d)(3).
Commerce responds that the regulation was validly promulgated and
necessary to fill the uncertainty created by the statute.

Commerce explains that when it was promulgating 19 C.F.R.
§ 351.204(d)(3), it looked to Article 9.4 of the World Trade
Organization ("WTO") Antidumping Agreement for guidance.  That
Article contemplates "parallel proceedings for voluntary
respondents."  Commerce also states that, for policy reasons, it
excluded voluntary respondents' rates from its all-others
calculation.  Gov't Response at 17–19, Jan. 4, 2012, ECF No. 33.

All parties agree that the WTO Subsidies and Countervailing
Measures Agreement, which governs countervailing duty measures,
contains no provision parallel to Article 9.4 of the WTO
Antidumping Agreement.  The parties, however, arrive at two
different conclusions from this difference.  Plaintiffs contend
that the absence of such a provision, in the Subsidies Agreement,
indicates that the Antidumping Agreement should have no bearing
on a CVD investigation.  Commerce, on the other hand, relies on

legislative history to conclude that Congress believed it was

"appropriate to treat voluntary responses in countervailing duty

investigations in a similar manner."  Gov't Response at 19

(citing S.R. 103-412 at 83 (1984)).  Commerce further argues that

voluntary respondents are unrepresentative of the remaining

companies because of the incentives in the statute.  Commerce

contends that respondents will voluntarily seek review only when,

knowing their own commercial practices, they have good reason to

believe that their rates will be lower than those set for the

mandatory respondents, regardless of whether those mandatory

respondents are cooperative or not.  Gov't Response at 24.

Therefore, Commerce reasons, including rates from a "self

selected group" such as the voluntary respondents, would "be

expected to distort the weighted-average for the respondents

selected by the Department on a neutral basis."  Gov't Response

at 22 (citing Preamble, 62 Fed. Reg. at 27,310).

    This explanation for promulgating and relying on 19 C.F.R.

§ 351.204(d)(3) is reasonable.  As the WTO Subsidies and

Countervailing Measures Agreement is silent on the issue, 19

C.F.R. § 351.204(d)(3) was validly promulgated as a reasonable

interpretation of 19 U.S.C. § 1671d(c)(5)(A).[9]

---

    [9] Plaintiffs also argue that the final all-others rate
chosen by Commerce, 374.15%, amounts to an unlawful application
of an AFA rate because it is identical to the AFA rate but was
imposed without the statutorily required finding of non-

### B.

Our decision that the establishment of an all-others rate is
not controlled by the Plaintiffs' reading of the statute's
provisions, and to uphold Commerce's regulation, is not the end
of the matter.  Nor is it conclusive either that Commerce's
regulation permits it not to include, in its all-others
calculation, CVD rates calculated for voluntary respondents, 19
CFR § 351.204(d)(3), or that Commerce is permitted to use the
individual AFA subsidy rates determined for the high-volume
mandatory respondents in its establishment of an all-others rate.
19 U.S.C. §1677f-1(e).  This is because the statute also requires
that Commerce must use a "reasonable method" for establishing
that all-others rate. 19 U.S.C. §1671d(c)(5)(A)(ii).[10]

The issue therefore is whether Commerce's decision to
calculate the all-others rate using the weighted average of the
rates determined for the mandatory respondents, all of whom were

---

cooperation.  Plaintiff's Br. at 26-27.  The statute, however,
expressly allows Commerce to use facts available rates, at least
in some reasonable way, to calculate the all-others rates.  19
U.S.C. § 1671d(c)(5)(A)(ii).  Therefore, Plaintiff's argument is
unavailing.

[10] As noted above, section 1671d provides for Commerce to
"use any reasonable method to establish an all-others rate for
exporters and producers not individually investigated" when the
rates determined for exporters and producers is zero, *de minimis*,
or calculated entirely under AFA.  19 U.S.C.
§ 1671d(c)(5)(A)(i)-(ii).

non-cooperative and therefore received AFA rates, is

reasonable.[11]

We begin our analysis of whether Commerce's method used here

was reasonable with a brief consideration of the two prior agency

decisions upon which Commerce relies, Certain Potassium Phosphate

Salts from the PRC, 75 Fed. Reg.  30,375 (Dep't Commerce Jun. 1,

2010)(Final Affirmative Countervailing Duty Determination and

Termination of Critical Circumstances Inquiry) ("Phosphate Salts

From the PRC") and Raw Flexible Magnets from the People's

Republic of China, 73 Fed. Reg. 39,667 (Dep't Commerce Jul. 10,

2008) (Final Affirmative CVD Determination) ("Flexible Magnets

from the PRC").  Neither of these investigations involved

voluntary respondents; rather the record was limited to mandatory

respondents.  Accordingly, these cases are not precedent for the

decision here, and thus do not provide a basis for Commerce's

choice.

Aside from its reliance on Phosphate Salts from the PRC and

Flexible Magnets from the PRC, and after rejecting the arguments

of the parties regarding its selection of an all-others rate,

ultimately, Commerce states that it made the choice to set the

all-others rate as equal to the AFA rate "[b]ecause there were no

_____

[11] Plaintiffs also challenge Commerce's preliminary all-
others rate.  However, the court's jurisdiction under 28 U.S.C.
§ 1581(c) is to review final agency action.

calculated rates for individually investigated mandatory

respondents on this record." I&D Memo, Comment 9 at 52.  But

this was a situation of Commerce's own making.  Nothing prevented

Commerce from identifying other respondents for mandatory

investigation.

     Moreover, the rates for voluntary respondents were on the

record.  While Commerce was permitted not to use the voluntary

respondents' rates in setting the all-others rate, these rates

nonetheless demonstrate that the AFA rate was not attributable to

all respondents.  Similarly, while Commerce was permitted to

recognize that the remaining or all-other producers/exporters had

chosen not to seek voluntary respondent status, and thus could

not assume or rely on being granted a rate based on the voluntary

respondents' rates, there is nothing on the record here that

indicates that the AFA rate is attributable to these other

parties.

     Commerce disputes this aspect of the Plaintiffs' challenge

by noting that Plaintiffs have been unable to cite case law which

holds that an all-others rate must be corroborated.  But this

argument misses the point.  Administrative law is rooted in the

reasonableness standard, and this standard applies with equal

force regardless of whether the issue originates in an

antidumping or countervailing duty investigation.

Certainly it is the parties' responsibility to create a record from which Commerce may decide the issues presented. See QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("Although Commerce has authority to place documents in the administrative record that it deems relevant, 'the burden of creating an adequate record lies with [interested parties] and not with Commerce.'" (alteration in original) (quoting Tianjin Mach. Imp. & Exp. Corp. v. United States, 16 CIT 931, 936, 806 F. Supp. 1008, 1015 (1992)).  Here, the Plaintiffs chose to leave Commerce with the difficult task of selecting an all-others rate with limited information before it.

Nonetheless, there is nothing in Commerce's decision which indicates a logical connection between the AFA rate and Commerce's conclusion to apply that rate to the remaining parties.  See Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 168 (1962)(requiring a rational connection between the facts found and the choice made).  There is nothing to indicate that Commerce "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." Id.; see also, China Kingdom Imp. & Exp. Co. v. United States, 31 CIT 1329, 1358 (2007) (Commerce has a responsibility to ensure accuracy of rates).

Here Commerce chose to select the largest

exporters/producers by volume as mandatory respondents rather than to select a representative, valid sample of exporters/producers as permitted by 19 U.S.C. § 1677f-1(e)(2)(A)(i).  Respondent Selection Memo at 4.  While this choice is permitted by law,  19 U.S.C. § 1677f-1(c)(2)(B), having made such a choice – and having chosen not to select a representative, valid sample – Commerce cannot then claim that the rates determined for the large volume respondents are representative of other exporters/producers.  Similarly, while Commerce's regulation states that the all-others rate shall exclude the weighted average of the voluntary respondents' rates, that regulation does not provide a basis for asserting that the mandatory respondents' AFA rate is appropriate for other exporters/producers.

Finally, an AFA rate is to be remedial, not punitive.  KYD, Inc. v. United States, 607 F.3d 760, 767–78 (Fed. Cir. 2010).  Nothing on the record here indicates that Commerce considered how to serve this purpose in selecting the applicable all-others rate in this case.  Thus Commerce, in making its choice, failed to consider an important aspect of the problem presented.  Motor Vehicles Mfrs. Ass'n, 463 U.S. at 43.

In this case, Commerce is required to make a reasonable decision, considering the important aspects of the problem

presented, and explain why that decision complies with the statutory reasonableness requirement.  We remand to give it the opportunity to do so.

**CONCLUSION**

For the forgoing reasons, Commerce's calculations are REMANDED.

Commerce shall have until May 4, 2012 to complete and file its Remand Results.  Plaintiffs, Plaintiff-Intervenors, and Defendant-Intervenor shall have until May 18, 2012 to file comments.  Plaintiffs, Plaintiff-Intervenors, Defendant, and Defendant-Intervenor shall have until May 30, 2012 to file any reply.

It is **SO ORDERED**.

                                    ____/s/ Donald C. Pogue____
                                    Donald C. Pogue, Chief Judge

Dated: April 4, 2012
       New York, New York