Slip Op. 15 - 85

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────────┐
│ MACLEAN-FOGG CO., ET AL.,                │
│                                          │
│         Plaintiffs,                      │
│                                          │
│              v.                          │
│                                          │
│ UNITED STATES,                           │
│                                          │
│         Defendant,                       │
│                                          │
│              and                         │
│                                          │
│ ALUMINUM EXTRUSIONS FAIR TRADE           │
│ COMMITTEE,                               │
│                                          │
│         Defendant-Intervenor.            │
└─────────────────────────────────────────┘
```

**PUBLIC VERSION**

Before: Donald C. Pogue,
        Senior Judge

Consol. Court No. 11-00209[1]

OPINION and ORDER

[remanding U.S. Department of Commerce's countervailing duty
determination]

Dated: August 11, 2015

Thomas M. Keating, Hoes Keating & Pilon, of Chicago,
IL, for Plaintiffs MacLean-Fogg Co. and Fiskars Brands, Inc.

Craig A. Lewis and T. Clark Weymouth, Hogan Lovells US
LLP, of Washington, DC, for Plaintiff Evergreen Solar, Inc.

Mark B. Lehnardt, Lehnardt & Lehnardt LLC, of Liberty,
MO, for Plaintiffs Eagle Metal Distributors, Inc. and Ningbo
Yili Import & Export Co., Ltd.

Tara K. Hogan, Senior Trial Counsel, and Douglas
Edelschick, Trial Attorney, Commercial Litigation Branch, Civil
Division, U.S. Department of Justice, of Washington, DC, for the

---

[1] This case is consolidated with Ct. Nos. 11-00210, 11-00220,
and 11-00221. Order, Aug. 23, 2011, ECF No. 26, at ¶ 2.

Defendant.  Also on the brief were <u>Benjamin C. Mizer</u>, Principal
Deputy Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director,
and <u>Reginald T. Blades, Jr.</u>, Assistant Director.  Of counsel was
<u>Scott D. McBride</u>, Senior Attorney, Office of the Chief Counsel
for Trade Enforcement & Compliance, U.S. Department of Commerce.

     <u>Alan H. Price</u> and <u>Robert DeFrancesco</u>, Wiley Rein LLP,
of Washington, DC, for the Aluminum Extrusions Fair Trade
Committee.

     **Before Pogue, Senior Judge:**  This consolidated action

arises from the U.S. Department of Commerce's ("Commerce")

countervailing duty ("CVD") investigation of aluminum extrusions

from the People's Republic of China ("China").[2]  Before the court

are the results of Commerce's redetermination on remand of the

"all-others" CVD rate, pursuant to the Court of Appeals'

decision in <u>MacLean-Fogg Co. v. United States</u>, 753 F.3d 1237,

1246 (Fed. Cir. 2014) ("<u>MacLean-Fogg V</u>").[3]

     The court has jurisdiction pursuant to Section

516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended,

---

[2] <u>See</u> <u>Aluminum Extrusions from the People's Republic of China</u>,
76 Fed. Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (final
affirmative countervailing duty determination) ("<u>Final</u>
<u>Determination</u>") and accompanying Issues & Decision Mem.,
C-570-968, Investigation (Mar. 28, 2011) ("<u>I&D Mem.</u>").

[3] <u>See</u> Final Results of Redetermination Pursuant to Ct. Remand,
ECF No. 108-1 ("<u>Remand Results</u>"); Def.-Intervenor Aluminum
Extrusions Fair Trade Comm.'s [("AEFTC")] Comments on Final
Results of Redetermination Pursuant to Remand, ECF No. 110
("Pet'r's Br.") & [AEFTC's] Suppl. Briefing Rebuttal Comments,
ECF Nos. 118 (conf. version) & 119 (pub. version) ("Pet'r's
Suppl. Br.") (challenging Commerce's all-others rate calculation
in the <u>Remand Results</u>).

19 U.S.C. § 1516a(a)(2)(B)(i) (2012)[4] and 28 U.S.C. § 1581(c)

(2012).

          As explained below, because Commerce's decision to

rely on simple averaging when calculating the "all-others" rate

in this case was an unreasonable judgment in the application of

19 U.S.C. § 1671d(c)(5)(A)(i), this determination is remanded

for reconsideration.

**BACKGROUND**

          Where, as here, a countervailing duty investigation

involves a large number of exporters and/or producers as

potential respondents, Commerce is authorized to select a sample

of these exporters and producers for individual examination (the

"mandatory" respondents).[5]  In addition, the remaining exporters

and producers may request an individualized examination as

"voluntary" respondents.[6]  Companies not selected as mandatory or

voluntary respondents receive a CVD rate that is calculated for

"all-other" companies (the "all-others" rate),[7] which must equal

the weighted average of all "individually investigated"

---

[4] All further citations to the Tariff Act of 1930, as amended,
are to Title 19 of the U.S. Code, 2012 edition.

[5] 19 U.S.C. § 1677f-1(e)(2); MacLean-Fogg V, 753 F.3d at 1238.

[6] 19 U.S.C. § 1677m(a); 19 C.F.R. § 351.204(d) (2011).

[7] 19 U.S.C. § 1671d(c)(1)(B)(i)(I).

companies' rates,[8] unless all such rates are zero/ *de minimis* or entirely based on "facts otherwise available," rather than the respondents' own submissions.[9]  Consequently, Commerce generally constructs the all-others rates by using the weighted average of the mandatory respondents' rates.[10]

Following this statutory scheme, in the CVD investigation at issue here, Commerce selected the three companies exporting the largest volume of subject imports during the period of investigation as the mandatory respondents.[11] However, none of these three companies responded to Commerce's requests for information.[12]  Commerce therefore found that the

---

[8] 19 U.S.C. § 1671d(c)(5)(A)(i).

[9] See id. at §§ 1671d(c)(5)(A)(ii), 1677e.

[10] Cf. Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1373 (Fed. Cir. 2013) (discussing 19 U.S.C. § 1673d(c)(5)(A) – the identically-worded antidumping all-others rate provision); compare 19 U.S.C. § 1671d(c)(5)(A)(i) ("[T]he all-others rate shall be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and *de minimis* countervailable subsidy rates, and any rates determined entirely under section 1677e of this title."), with 19 U.S.C. § 1673d(c)(5)(A) ("[T]he estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and *de minimis* margins, and any margins determined entirely under section 1677e of this title.").

[11] MacLean-Fogg Co. v. United States, 36 CIT __, 836 F. Supp. 2d 1367, 1370 (2012) ("MacLean-Fogg I").

[12] Id.

mandatory respondents "withheld requested information and significantly impeded [the] proceeding,"[13] and failed to act to the best of their abilities to cooperate in the investigation.[14] Accordingly Commerce established CVD rates for the mandatory respondents based entirely on adverse facts available ("AFA").[15] Meanwhile, two companies had requested and were granted individualized examinations as voluntary respondents, each ultimately receiving a non-zero, non-*de minimis*, non-AFA CVD rate.[16]

With regard to the all-others rate, agency regulations in force at the time of the investigation prohibited Commerce from including the voluntary respondents' CVD rates in the all-others rate calculation.[17]  As this Court explained when

---

[13] I&D Mem. Section VI (Use of Facts Otherwise Available and Adverse Inferences) at 10 (applying 19 U.S.C. §§ 1677e(a)(2)(A) & (C) (requiring Commerce to "use the facts otherwise available" if, *inter alia*, a respondent withholds information requested by Commerce during the investigation, or "significantly impedes" the proceeding)).

[14] Id. (applying 19 U.S.C. § 1677e(b) (permitting Commerce to "use an inference that is adverse to the interests of [a] party [that has failed to cooperate by not acting to the best of its ability to comply with Commerce's requests for information] in selecting from  among the facts otherwise available")).

[15] Id.; MacLean-Fogg I, 36 CIT at __, 836 F. Supp. 2d at 1370-71.

[16] MacLean-Fogg I, 36 CIT at __, 836 F. Supp. 2d at 1371.

[17] 19 C.F.R. § 351.204(d)(3) ("In calculating an all-others rate . . ., [Commerce] will exclude weighted-average . . . countervailable subsidy rates calculated for voluntary
(footnote continued)

upholding this regulation in <u>MacLean-Fogg I</u>, Commerce's basis for excluding the voluntary respondents' rates from the all-others rate calculation was the concern that voluntary respondents are unrepresentative of the remaining companies (particularly where, as here, the three largest exporters/producers did not respond to Commerce's inquiries at all).[18]   The agency considered the voluntary respondents to be unrepresentative because, unlike the mandatory or the all-other respondents, the voluntary respondents are those that willingly submit their sales data of their own accord, presumably because their commercial practices are such that they have good reason to believe that their CVD rates will be lower than those set for the mandatory respondents (regardless of whether those mandatory respondents are cooperative or not), such that including the rates established for this self-selected group threatens distortion of the weighted-average of the more representative rates.[19]   But the Court of Appeals reversed this decision,[20]

---

respondents.") (invalidated by <u>MacLean-Fogg V</u>, 753 F.3d at 1240 ("We hold that 19 C.F.R. § 351.204(d)(3) is invalid . . . .")).

[18] <u>Maclean-Fogg I</u>, 26 CIT at __, 836 F. Supp. 2d at 1374 (noting Commerce's concerns that voluntary respondents are a self-selecting group more likely to have a lower CVD rate, the inclusion of which could skew the all-others rate).

[19] <u>Id.</u>; <u>see also</u> <u>Antidumping Duties; Countervailing Duties</u>, 62 Fed. Reg. 27,296, 27,310 (Dep't Commerce May 19, 1997) (final rule) (explaining Commerce's basis for the regulation).

invalidated 19 C.F.R. § 351.204(d)(3), and ordered this court to remand Commerce's all-others rate calculation, requiring the agency to include the two voluntary respondents' rates when determining the all-others rate in this case "under the general rule, [19 U.S.C.] § 1671d(c)(5)(A)(i)."[21]

On remand, Commerce applied 19 U.S.C. § 1671d(c)(5)(A)(i), as interpreted by MacLean-Fogg V, excluding the three mandatory respondents' AFA-based rates from the all-others calculation, but including the two non-zero, non-*de minimis*, non-AFA based voluntary respondents' rates.[22] Considering the two voluntary respondents' rates, however, Commerce found that it could not weight-average these rates without impermissibly revealing the two companies' business

---

[20] MacLean-Fogg V, 753 F.3d at 1246; but see id. at 1246-53 (Reyna, J. dissenting).

[21] MacLean-Fogg V, 753 F.3d at 1246; Order for Remand, ECF No. 103 (remanding to Commerce for reconsideration consistent with the Court of Appeals' opinion); see 19 U.S.C. § 1671d(c)(5)(A)(i) ("For purposes of this subsection and section 1671b(d) of this title, the all-others rate shall be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and *de minimis* countervailable subsidy rates, and any rates determined entirely under section 1677e of this title.").

[22] Remand Results, ECF No. 108-1, at 6 (explaining that Commerce did not include the net subsidy rates for the non-cooperative mandatory respondents in its all-others rate calculation because those rates were based entirely on AFA).

proprietary information ("BPI") to each other.[23]  Normally, in

such situations Commerce "would calculate a weighted-average

countervailing duty rate using the publicly available, ranged

values of the [individually examined] respondents' exports of

subject merchandise to the United States, compare both this

weighted-average rate and a simple average of [these]

respondents' countervailing duty rates to the actual weighted-

average rate (calculated using the proprietary export values)

and assign to All Others the amount closer to the actual

weighted-average countervailable subsidy rate."[24]  But in this

case, although agency regulations require that all BPI

submissions, including numerical data, be accompanied by

publicly available summaries,[25] the two voluntary respondents did

not submit public, "ranged" versions of their BPI.[26]  During its

investigation, Commerce chose not to enforce this requirement

because the agency's regulations then expressly prohibited using

---

[23] Id.; see 19 U.S.C. § 1677f(b) (prohibiting impermissible disclosure of BPI).

[24] Prelim. Issues & Decision Mem., Certain Frozen Warmwater Shrimp from India, C-533-854, Investigation (May 28, 2013) (adopted in 78 Fed. Reg. 33,344 (Dep't Commerce June 4, 2013) (preliminary countervailing duty determination)) Section VIII (Calculation of the All Others Rate) at 25 (unchanged in 78 Fed. Reg. 50,385 (Dep't Commerce Aug. 19, 2013) (final affirmative countervailing duty determination)) ("Shrimp from India").

[25] 19 C.F.R. § 351.304(c)(1).

[26] See Remand Results, ECF No. 108-1, at 6.

the voluntary respondents' countervailable subsidy rates to calculate the all-others rate.[27]  Commerce therefore "did not find that it was necessary during the underlying investigation to request the publicly-ranged or indexed numerical data from the voluntary respondents."[28]

Thereafter, however, as noted above, the Court of Appeals for the Federal Circuit held that countervailable subsidy rates calculated for voluntary respondents in CVD investigations unambiguously fall within the meaning of "countervailable subsidy rates established for exporters and producers individually investigated," as used in 19 U.S.C. § 1671d(c)(5)(A)(i), and therefore that such rates *must* be used in the calculation of an all-others rate, so long as they are not zero/*de minimis* or based entirely on facts otherwise available or AFA.[29]  On remand, finding that "the publicly ranged

_____

[27] Def.'s Supplemental Br., ECF No. 115 ("Def.'s Suppl. Br.") at 4.

[28] Id.

[29] MacLean-Fogg V, 753 F.3d at 1240-46 (interpreting 19 U.S.C. § 1671d(c)(5)(A)(i) ("[T]he all-others rate [in a CVD investigation] shall be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervailable subsidy rates, and any rates determined entirely [using facts otherwise available, pursuant to 19 U.S.C. § 1677e].")); see id. at 1244 ("[C]ountervailing duty rates (other than zero or de minimis [or based entirely on AFA]) of voluntary respondents must be included in the general rule for
(footnote continued)

sales data that could be used to calculate a weighted average

all others rate based on publicly available data [were] not on

the administrative record," Commerce therefore "based the

revised all others rate on a simple average of the two voluntary

respondents' calculated net subsidy rates."[30]

     In commenting on the remand results below, the

Aluminum Extrusions Fair Trade Committee ("AEFTC") – a

petitioner in the underlying countervailing duty investigation

and an intervenor in this action[31] — argued, *inter alia*, that

Commerce should have calculated the all-others rate using a

*weighted* average of the two voluntary respondents' rates,

contending that 19 C.F.R. § 351.304(c)(1) requires parties to

---

calculation of the all-others rate.  Because the statute is
clear that such voluntary respondent rates must be included in
the general all-others rate calculation, Commerce's regulatory
interpretation to the exact contrary is invalid."); id. at 1246
(remanding "for determination of the all-others rate under the
general rule, [19 U.S.C.] § 1671d(c)(5)(A)(i)").

[30] Remand Results, ECF No. 108-1, at 6; see also id. at 6-7
(arguing that basing the all-others rate on a simple average of
the individually-investigated respondents' non-zero,
non-*de minimis*, non-AFA rates "is consistent with [Commerce]'s
practice of determining an all others rate when there are only
two companies which have been individually investigated")
(citing Utility Scale Wind Towers from the People's Republic of
China, 77 Fed. Reg. 75,978, 75,979 (Dep't Commerce Dec. 26,
2012) (final affirmative countervailing duty determination)
("Wind Towers from China")).

[31] Consent Mot. to Intervene as a Matter of Right, ECF No. 7;
Order, July 7, 2011, ECF No. 12 (granting motion to intervene).

submit publicly ranged versions of their BPI data, and that
Commerce should therefore "reopen the record to obtain the
publicly ranged data that is necessary for [Commerce] to
calculate a weighted average all others rate."[32]  Commerce,
however, declined to reopen the record.[33]  Rather, Commerce found
that the voluntary respondents' publicly ranged sales data was
neither "necessary [nor] warranted" because "the use of a simple
average of the two voluntary respondents' net subsidy rates to
calculate the all others rate is consistent with [Commerce's]
practice in cases in which the publicly available ranged sales
data are not on the record."[34]  AEFTC now challenges this
determination.[35]  Alternatively, AEFTC also argues that Commerce
should have established a single subsidy rate for both voluntary

---

[32] Remand Results, ECF No. 108-1, at 8 (discussing Petitioners'
comments below).

[33] Id. at 10 ("We . . . disagree with Petitioners that [Commerce]
should reopen the record in order to obtain publicly ranged data
that would permit [Commerce] to calculate a weighted average all
others rate.").

[34] Id.; see also Def.'s Suppl. Br., ECF No. 115, at 5 ("Commerce
decided to calculate the all-others rate in accordance with its
practice and used a simple average in the Remand Results, rather
than expend additional administrative resources and further
delay the ultimate resolution of this proceeding.") (citing
Remand Results, ECF No. 108-1, at 6-7, 10).

[35] Pet'r's Br., ECF No. 110, at 3-4.

respondents, because the companies are affiliated.[36]

## STANDARD OF REVIEW

The court will sustain Commerce's countervailing duty determinations on remand if they are in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law.[37]  Where the statute and regulations leave the agency with a measure of discretion, the court reviews such decisions for abuse of discretion.[38]  "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors."[39]  Moreover, Commerce's discretion "is bounded at the outer limits by the

---

[36] Id. at 2-3.  AEFTC additionally argues that the Court of Appeals incorrectly invalidated 19 C.F.R. § 351.204(d)(3), pursuant to which Commerce had initially excluded the voluntary respondents' subsidy rates from the all-others rate calculation. See id. at 1-2.  Because this Court is bound by the Court of Appeals' decision, however, in the absence of overruling precedent, this issue is settled. MacLean-Fogg V, 753 F.3d at 1244; see supra note 29 (quoting relevant language).

[37] See 19 U.S.C. § 1516a(b)(1)(B)(i).

[38] See, e.g., Wuhu Fenglian Co. v. United States, 36 CIT __, 836 F. Supp. 2d 1398, 1403 (2012).

[39] Dongtai Peak Honey Indus. Co. v. United States, 38 CIT __, 971 F. Supp. 2d 1234, 1239 (2014) (quoting WelCom Prods., Inc. v. United States, 36 CIT __, 865 F. Supp. 2d 1340, 1344 (2012) (citing Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005))).

obligation to carry out its statutory duty of 'determining

dumping margins "as accurately as possible."'"[40]

## DISCUSSION

AEFTC argues that Commerce's calculation of the all-

others rate on remand – based on a simple average of the two

voluntary respondents' subsidy rates – was contrary to law

because (I) Commerce had found these two companies to be

affiliated, and so should have established a single rate for

both and then used that rate as the all-others rate[41]; or, in the

alternative, because (II) Commerce used a simple (rather than

weighted) average of the two voluntary respondents' subsidy

rates, contrary to 19 U.S.C. § 1671d(c)(5)(A)(i).[42]   Each

argument is addressed in turn.

I.   Affiliation

AEFTC first argues that because Commerce found that

the two voluntary respondents were affiliated, Commerce should

have established a single rate for both and then used that rate

---

[40] Wuhu Feglian, 36 CIT at __, 836 F. Supp. 2d at 1403
(quoting NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208
(Fed. Cir. 1995) (quoting Rhone Poulenc, Inc. v. United States,
899 F.2d 1185, 1191 (Fed. Cir. 1990))) (alteration marks
omitted).

[41] See Pet'r's Br., ECF No. 110, at 2-3.

[42] See id. at 3-4.

as the all-others rate.[43]   Commerce responds that its finding

that the two voluntary respondent companies were "affiliated

persons" under 19 U.S.C. § 1677(33) is insufficient to compel

the conclusion that these companies form a single entity for

which a single subsidy rate is appropriate.[44]   Specifically,

Commerce's regulations provide that the agency will generally

attribute subsidies to (and hence establish CVD rates for) "the

products produced by the corporation that received the

---

[43] See id. at 2-3.

[44] See Def.'s Resp. to Comments Regarding the Remand
Redetermination, ECF No. 112 ("Def.'s Br.") at 4-6;
see also Def.'s Suppl. Br., ECF No. 115, at 6 ("A determination
by Commerce that the two voluntary respondents were 'affiliated
persons' under 19 U.S.C. § 1677(33) did not transform them into
the same corporate person . . . ."); Remand Results,
ECF No. 108-1, at 9-10 ("While [Commerce] determined that the
[two voluntary respondents] were affiliated under [19 U.S.C.
§ 1677(33)] by virtue of familial relations that exist between
the firms, [Commerce], citing to its regulations, also found
that the mere affiliation was not a sufficient basis to find
that firms are cross-owned.  [Commerce] further determined that
the [two voluntary respondents] do not meet the additional
criteria that are necessary for [Commerce] to find that cross-
ownership exists between the two firms.  . . .  Accordingly, in
the Final Determination, [Commerce] found that the [two
voluntary respondents] were not cross-owned and, [therefore,]
treated [the] two firms as separate entities and, accordingly,
calculated separate net subsidy rates for the two firms.")
(citing I&D Mem. at 5-6 (citing Countervailing Duties, 63 Fed.
Reg. 65,348, 65,401 (Dep't Commerce Nov. 25, 1998) (final rule)
(explaining the basis for 19 C.F.R. § 351.525(b)(6)'s provision
that mere affiliation is not sufficient for subsidy
attribution); 19 C.F.R. § 351.525(b)(6)(vi)); Final
Determination, 76 Fed. Reg. at 18,522-23).

subsidy,"[45] except "[i]f two (or more) corporations *with cross-ownership* produce the subject merchandise."[46]  Where two or more corporations "with cross-ownership" produce the subject merchandise, Commerce "will attribute [and countervail for] the subsidies received by either or both corporations to the products produced by both corporations," using a single CVD rate.[47]

The regulations further provide that "[c]ross-ownership exists between two or more corporations where one corporation can use or direct the individual assets of the other corporation(s) in essentially the same ways it can use its own assets,"[48] adding that this standard will normally be met "where there is a majority voting ownership interest between two corporations or through common ownership of two (or more) corporations."[49]  Moreover, in explaining these regulatory provisions, Commerce has expressly stated that mere affiliation between two companies, within the meaning of 19 U.S.C. § 1677(33), is insufficient for a finding of cross-ownership

---

[45] 19 C.F.R. § 351.525(b)(6)(i).

[46] Id. at § 351.525(b)(6)(ii) (emphasis added).

[47] Id.

[48] Id. at § 351.525(b)(6)(vi).

[49] Id.

which would support the establishment of a single subsidy rate for two or more companies.[50]

Here, Commerce found that the record of this investigation contained "no evidence" that the two voluntary respondents "have the ability to direct the individual assets of one another as if they were their own."[51]  Commerce accordingly concluded that cross-ownership among these companies was not established, and hence determined that a single subsidy rate for both would not be appropriate.[52]  As AEFTC has not provided any "new information or argument that would warrant reconsideration . . . on this point,"[53] Commerce's finding that the two voluntary respondents do not meet the regulatory criteria for cross-

---

[50] See Countervailing Duties, 63 Fed. Reg. at 65,401-02 ("[W]e simply do not find the affiliation standard to be a helpful basis for attributing subsidies.  Nowhere in the statute or the [Statement of Administrative Action] is there any indication that the affiliated party definition [in 19 U.S.C. § 1677(33)] was intended to be used for subsidy attribution purposes.  Rather, it identifies the broadest category of relationships which might be relevant to either an antidumping or a countervailing duty analysis.  . . .  [W]e do not intend to investigate subsidies to affiliated parties unless cross-ownership exists or other information, such as a transfer of subsidies, indicates that such subsidies may in fact benefit the subject merchandise produced by the corporation under investigation.").

[51] I&D Mem. Section III (Attribution of Subsidies) at 6.

[52] See id.; 19 C.F.R. §§ 351.525(b)(6)(i), (ii), (vi).

[53] Remand Results, ECF No. 108-1, at 10.

ownership is not contested.[54]  Furthermore, AEFTC presents no
specific argument to support its contention that, contrary to
the agency's regulations, a finding of affiliation is sufficient
to require Commerce to assign a single subsidy rate to the
affiliated companies.[55]

       Accordingly, because Commerce's regulations provide
that only companies that are cross-owned may have their
subsidies attributed to one another[56] (the reasoned basis for
which[57] is not explicitly challenged here[58]), and because AEFTC
provides no evidentiary support or argument to impugn Commerce's
finding that the two voluntary respondents here are not cross-
owned,[59] Commerce's determination to calculate separate subsidy
rates for these companies is therefore sustained.

II.  Simple Averaging

---

[54] See Pet'r's Br., ECF No. 110, at 2-3 (conceding that AEFTC has
provided no new information to warrant reconsideration of
Commerce's finding that the two voluntary respondents are not
cross-owned, but arguing that Commerce's *affiliation* finding
should have sufficed to establish a single subsidy rate for the
two affiliated companies).

[55] See id.

[56] See 19 C.F.R. §§ 351.525(b)(6)(i)-(ii).

[57] See Countervailing Duties, 63 Fed. Reg. at 65,401-02.

[58] See Pet'r's Br., ECF No. 110, at 2-3.

[59] See I&D Mem. Section III (Attribution of Subsidies) at 6;
Pet'r's Br., ECF No. 110, at 2-3.

Next, in the alternative, AEFTC argues that Commerce acted contrary to law by using a simple average of the two voluntary respondents' subsidy rates – rather than a weighted average, as required by 19 U.S.C. § 1671d(c)(5)(A)(i) – to establish the all-others rate.[60]  Specifically, AEFTC argues that Commerce unreasonably determined that weight-averaging the rates would impermissibly reveal BPI, because the agency's regulations require that all BPI submissions have correlating public versions, and provide a methodology for converting BPI into public information.[61]  AEFTC argues that Commerce abused its discretion by neither requesting that the respondents apply this methodology to their BPI and submit public versions of the necessary data, nor itself applying this methodology to convert the BPI to usable data.[62]

Commerce responds by pointing to 19 U.S.C. § 1677f(b)

---

[60] See Pet'r's Br., ECF No. 110, at 3-4.

[61] Id.; see 19 C.F.R. § 351.304(c)(1) ("A person filing a submission that contains information for which business proprietary treatment is claimed must file a public version of the submission.  .  .  .  The public version must contain a summary of the bracketed information in sufficient detail to permit a reasonable understanding of the substance of the information.  .  .  .  Generally, numerical data will be considered adequately summarized if grouped or presented in terms of indices or figures within 10 percent of the actual figure.  .  .  .").

[62] Pet'r's Suppl. Br., ECF Nos. 118 & 119, at 2-7.

– which provides that information designated as BPI "shall not be disclosed to any person without the consent of the person submitting the information," other than to certain U.S. Government officials and authorized applicants under an administrative protective order[63] – explaining that "[a]t no point during the investigation did counsel for either voluntary respondent authorize Commerce to reveal proprietary information to the other,"[64] and arguing that weight-averaging these subsidy rates to arrive at the all-others rate was therefore foreclosed by the fact that doing so would reveal the two companies' BPI to each other.[65]

     Although Commerce acknowledges that weight-averaging would be possible (without improperly divulging the two

---

[63] Def.'s Suppl. Br., ECF No. 115, at 5 (citing 19 U.S.C. § 1677f(b), and quoting Allegheny Ludlum Corp. v. United States, 27 CIT 1461, 1465 (2003) (not reported in the Federal Supplement) (sustaining as reasonable Commerce's interpretation that 19 U.S.C. § 1677f(b) provides "a limited exception to the Trade Secrets Act, 18 U.S.C. § 1905, which generally prohibits an agency from disclosing business proprietary information") (citation omitted)).

[64] Id. at 6 (citing 19 C.F.R. § 351.306(a)(5) (authorizing Commerce to disclose BPI to "[a]ny person to whom the submitting person specifically authorizes disclosure in writing")).

[65] Id. at 5-6; see also Def.'s Br., ECF No. 112, at 3; Remand Results, ECF No. 108-1, at 6 ("[W]e are unable to calculate a weighted average all others rate without also divulging the two voluntary respondents' business proprietary data to each other.").

respondents' BPI to each other) if the BPI were accompanied with public versions of the data, as required by 19 C.F.R. § 351.304(c)(1),[66] such information is not on the record here because the voluntary respondents did not submit public versions of their BPI, and Commerce "did not find that it was necessary during the underlying investigation to [enforce 19 C.F.R. § 351.304(c)(1) and] request the publicly-ranged or indexed numerical data from the voluntary respondents" because, at that time, 19 C.F.R. § 351.204(d)(3) expressly prohibited using the voluntary respondents' rates in the all-others rate calculation.[67]  On remand, responding to AEFTC's suggestion that Commerce re-open the record to obtain these missing publicly ranged data, so the two voluntary respondents' rates may be weight-averaged without divulging BPI to each other, the agency continued to find that such data were neither "necessary [n]or

---

[66] See Remand Results, ECF No. 108-1, at 6 ("In investigations involving two individually examined respondents where the use of a weighted average all others rate is not possible because the use of such a method would divulge the two firms' business proprietary data, . . . we may use a weighted average of their rates, weighted by the two respondents' public ranged sales data, if that data is on the administrative record.") (citations omitted); id. at 6 n.25 ("[W]hen available, [Commerce] may utilize publicly ranged data to determine the . . . all others rate."); 19 C.F.R. § 351.304(c)(1).

[67] Def.'s Suppl. Br., ECF No. 115, at 4.

warranted"[68] because using a simple average of the two rates, rather than "expend[ing] additional administrative resources and further delay[ing] the ultimate resolution of this proceeding," was a "reasonable choice."[69]

But the statute unequivocally and without exception requires that Commerce base the all-others rate on the *weighted* average of individually-investigated non-zero, non-*de minimis*, non-AFA rates.[70]  Defendant argues that "the statute and regulation are silent as to Commerce's methodology for calculating an all-others rate when using data derived from two respondents in a weighted-average calculation would divulge the firms' business proprietary data to each other, in violation of the administrative protective order."[71]  But in fact the statute (requiring Commerce to use a weighted-average when calculating the all-others rate[72]) and the regulations (requiring publicly ranged data for all BPI submissions[73]) preclude the situation

---

[68] <u>Remand Results</u>, ECF No. 108-1, at 10.

[69] Def.'s Suppl. Br., ECF No. 115, at 5 (citing <u>Remand Results</u>, ECF No. 108-1, at 6-7, 10).

[70] 19 U.S.C. § 1671d(c)(5)(A)(i).

[71] Def.'s Br., ECF No. 112, at 7.

[72] 19 U.S.C. § 1671d(c)(5)(A)(i).

[73] 19 C.F.R. § 351.304(c)(1) ("A person filing a submission that contains information for which business proprietary treatment is claimed *must* file a public version of the submission.  . . .
(footnote continued)

Commerce describes.  If "calculating an all-others rate when

using data derived from two respondents in a weighted-average

calculation would divulge the firms' business proprietary data

to each other,"[74] 19 U.S.C. § 1671d(c)(5)(A)(i)'s requirement

that Commerce use a *weighted* average may be satisfied by

employing the publicly ranged data.[75]

        Commerce argues that the missing public data here are

nevertheless unnecessary because using a simple average is also

reasonable.[76]  But this argument ignores the accuracy-enhancing

value placed by the statute on accounting for the individually-

_____

The public version *must* contain a summary of the bracketed
information in sufficient detail to permit a reasonable
understanding of the substance of the information.") (emphasis
added).

[74] Def.'s Br., ECF No. 112, at 7.

[75] See Remand Results, ECF No. 108-1, at 6 n.25 ("[Commerce] may
utilize publicly ranged data to determine the . . . all others
rate.").

[76] See id. at 6 ("In investigations involving two individually
examined respondents where the use of a weighted average all
others rate is not possible because the use of such a method
would divulge the two firms' business proprietary data, we have
two options – we may use a simple average of the two
respondents' countervailable subsidy rates, or we may use a
weighted average of their rates, weighted by the two
respondents' publicly ranged sales data . . . .") (citations and
footnote omitted); id. at 6-7 ("[W]e have based the revised all
others rate on a simple average of the two voluntary
respondents' calculated net subsidy rates.  Such a calculation
is consistent with [Commerce's] practice of determining an all
others rate when there are only two companies which have been
individually investigated.") (citing Wind Towers from China,
77 Fed. Reg. at 75,979).

investigated respondents' relative sales volumes by weight-averaging to arrive at the all-others rate.[77]   Moreover, as AEFTC points out, here there was a significant disparity in the volume of sales between the two respondents whose rates were averaged to arrive at the all-others rate.[78]   Accordingly, taking a simple average of the two gives significantly more weight to the respondent with the lower sales volume, resulting in an all-others rate that is materially different from what it would otherwise be if it were properly weighted based on the relative size of each respondent's total sales.[79]   Thus Commerce's

_____

[77] See 19 U.S.C. § 1671d(c)(5)(A)(i).

[78] Pet'r's Suppl. Br., ECF Nos. 118 & 119, at 5 ("Commerce's calculation memoranda indicate that [one of the voluntary respondent's] total sales of [subject merchandise] was [[            ]] [other voluntary respondent] during the [period of investigation].") (citing Ex. 1 to Pet'r's Suppl. Br., ECF Nos. 118 & 119 (reproducing Commerce's memoranda regarding calculations for the two voluntary respondents)).

[79] See id. (noting that the respondent with the lower subsidy margin comprises "[[            ]] of the total denominator"); cf. Issues & Decision Mem., Aluminum Extrusions from the People's Republic of China, C-570-968, ARP 10-11 (Dec. 26, 2013) (adopted in 79 Fed. Reg. 106, 106 (Dep't Commerce Jan. 2, 2014) (final results of countervailing duty administrative review; 2010 and 2011)) ("AR1 I&D Mem.") cmt. 3 at 58 (faced with a similar situation in the subsequent first administrative review, where Commerce similarly could not calculate a weighted-average all-others rate without impermissibly revealing BPI, Commerce compared the results of using a simple average with those obtained from calculating a weighted-average using the public versions of the BPI, and "found that the weighted-average rate using publicly available, ranged sales values, rather than the simple-average rate, is the rate closer to the actual weighted-

(footnote continued)

argument – that completing the record with publicly ranged values of the two voluntary respondents' BPI was neither necessary nor warranted because a simple average would suffice – is unreasonable in light of the statute's clear preference for the accuracy-enhancing value of weight-averaging and the particular facts of this case.[80]

Additionally, Commerce incompletely characterizes its practice in cases where weight-averaging two respondents' rates would impermissibly reveal their BPI to each other as *either* taking a simple average of the two *or* taking an average weighted by the respondents' publicly ranged sales values.[81]  In fact Commerce's reasonable practice in such situations is to take

---

average subsidy rate (based on proprietary export values) and, thus, the better proxy") (citations omitted).

[80] Defendant also argues that Commerce chose to use a simple average, rather than seek to complete the record with publicly ranged values, to avoid "expend[ing] additional administrative resources and further delay[ing] the ultimate resolution of this proceeding." Def.'s Suppl. Br., ECF No. 115, at 5 (citing Remand Results, ECF No. 108-1, at 6-7, 10).  But resource-constraint and expediency do not excuse the agency from its statutory obligations; indeed, one overarching theme of this already protracted litigation, see Compl., ECF No. 6 (filed June 23, 2011), is that the agency is bound by the letter of the law, even (or perhaps especially) where doing so necessitates delaying the ultimate resolution of a proceeding to correct for legal deficiencies. Cf. Mac-Lean Fogg V, 753 F.3d at 1246 (remanding Commerce's all-others rate calculation, more than three years after its initial finalization, to be entirely re-done so as to conform to the plain language of the statute).

[81] Remand Results, ECF No. 108-1, at 6.

*both* averages and compare each to the actual weighted-average

(using BPI available to the agency), in order to arrive at the

nearest approximation of the all-others rate contemplated by

19 U.S.C. § 1671d(c)(5)(A)(i).[82]  This practice reasonably

reconciles 19 U.S.C. § 1671d(c)(5)(A)(i) (the all-others

provision) with 19 U.S.C. § 1677f(b) (the BPI provision) because

it most closely approximates the result contemplated by the all-

others provision without violating the BPI provision.  And while

Commerce relies on a handful of recent contrary determinations,

in which the agency has resorted to simple averaging in the

absence of publicly available data,[83] none of these decisions

provide any significant reasoning or explanation to indicate why

the necessary public information was absent from the record or

---

[82] AR1 I&D Mem., *supra* note 79, cmt. 3 at 58; Shrimp from India, *supra* note 24, at 25.

[83] Specifically, Commerce cites to four prior determinations: Shrimp from India, *supra* note 24, at 25; Certain Oil Country Tubular Goods from the Republic of Turkey, 79 Fed. Reg. 41,964, 41,965 (Dep't Commerce July 18, 2014) (final affirmative countervailing duty determination and final affirmative critical circumstances determination) ("OCTG from Turkey"); Chlorinated Isocyanurates from the People's Republic of China, 79 Fed. Reg. 10,097 (Feb. 24, 2014) (preliminary [countervailing duty] determination and alignment of final determination with final antidumping determination) (unchanged in 79 Fed. Reg. 56,560, 56,562 (Dep't Commerce Sept. 22, 2014) (final affirmative countervailing duty determination; 2012)) ("Chlorinated Isocyanurates from China"); and Wind Towers from China, 77 Fed. Reg. at 75,979. Remand Results, ECF No. 108-1, at 6-7 nn. 24 & 26.

why it could not be obtained, or how such simple averaging

comports with the statutory directive to weight-average

individual rates when calculating the all-others rate,[84] and

---

[84] In Shrimp from India, Commerce explained that its normal practice is to "calculate a weighted-average countervailing duty rate using the publicly available, ranged values of the mandatory respondents' exports of subject merchandise to the United States, compare both this weighted-average rate and a simple average of the mandatory respondents' countervailing duty rates to the actual weighted-average rate (calculated using the proprietary export values) and assign to All Others the amount closer to the actual weighted-average countervailable subsidy rate," but then stated that "we do not have publicly available information on U.S. sales value for one of the selected respondents," and explained that, "[b]ecause of this," the agency used a simple average to calculate the all-others rate. Shrimp from India, *supra* note 24, at 25.  Commerce provided no explanation for why the necessary public data were missing from the record, and no explanation as to how this approach comports with the statutory directive to weight-average individual rates when calculating the all-others rate. See id.; see also Issues & Decision Mem., Certain Frozen Warmwater Shrimp from India, C-533-854, Investigation (Aug. 12, 2013) (adopted in 78 Fed. Reg. 50,385 (Dep't Commerce Aug. 19, 2013) (final affirmative countervailing duty determination)) (providing no commentary on this issue).  In the remaining three determinations that Commerce relies on here, the agency provided even less explanation, simply stating that, "[n]otwithstanding the language of [19 U.S.C. § 1671d(c)(5)(A)(i)]," Commerce chose not to calculate the all-others rate by weight-averaging the rates of the individually investigated respondents "because doing so risks disclosure of proprietary information" and, without any additional reasoning or explanation, therefore using a simple average of the individual rates as the all-others rate. OCTG from Turkey, 79 Fed. Reg. at 41,965, and accompanying Issues & Decision Mem., C-489-817, Investigation (July 10, 2014) (providing no commentary on this issue); Chlorinated Isocyanurates from China, 79 Fed. Reg. at 10,098 (unchanged in the final results, 79 Fed. Reg. at 56,562, and accompanying Issues & Decision Mem., C-570-991, Investigation (Sept. 8, 2014) (providing no commentary on this issue)); Wind Towers from China, 77 Fed. Reg. at 75,979, and accompanying Issues &
(footnote continued)

accordingly none of these determinations supports the agency's argument here.

That the necessary public data are absent from the record here is due to Commerce's own decision not to enforce its regulatory requirement and request the necessary data from the submitting parties.[85]  Commerce initially "did not find that it was necessary" to complete the public record, including public versions of the voluntary respondents' BPI, because at the time 19 C.F.R. § 351.204(d)(3) precluded using the voluntary respondents' data in the all-others rate calculation.[86]  But even then Commerce faced a challenge to the legality of this regulation,[87] and it was unreasonable to presume that the ultimate outcome of this litigation would favor the agency, as indeed it did not.[88]

---

Decision Mem., C-570-982, Investigation (Dec. 17, 2012) (providing no commentary on this issue).

[85] See Def.'s Suppl. Br., ECF No. 115, at 4.

[86] Id.

[87] See MacLean-Fogg I, 36 CIT at __, 836 F. Supp. 2d at 1372; Case Br. of Eagle Metals Distribs., Inc., Ningbo Yili Imp. & Exp. Co., Ltd. & Zhaoqing Asia Aluminum Factory Co. Ltd., Aluminum Extrusions from the People's Republic of China, C-570-968, Investigation (Feb. 9, 2011), reproduced in [Pls.'] J.A., ECF No. 39 at Tab P, at 4 (arguing that "[Commerce]'s regulation excluding the calculated rates for voluntary respondents [from the all-others rate calculation] is void because it is contrary to the plain language of the statute").

[88] MacLean-Fogg V, 753 F.3d at 1244 ("Because the statute is
(footnote continued)

Moreover, even if the regulation excluding the voluntary respondents' rates from the all-others rate calculation had not been challenged and invalidated, and even if Commerce had been correct that the voluntary respondents' information would be used solely to calculate their own individual rates, Commerce also failed to consider another important concern.  By leaving the record of the voluntary respondents' rates calculations sealed from public scrutiny (because the voluntary respondents' rates are based on their non-public information), Commerce failed to recognize the value of ensuring that all aspects of the administrative record – including the evidentiary bases for the voluntary respondents' rates themselves (regardless of whether or not they are included in the all-others rate) – are as publicly available as they can be.  There is "a fundamental public interest in transparency in government,"[89] and "[t]he parties to a lawsuit are not the only

---

clear that [non-zero, non-*de minimis*, non-AFA] voluntary respondent rates must be included in the general all-others rate calculation, Commerce's regulatory interpretation to the exact contrary is invalid.").

[89] Former Emps. of Invista, S.a.r.l. v. U.S. Sec'y of Labor, 33 CIT 1523, 1524 n.1, 657 F. Supp. 2d 1359, 1360-61 n.1 (2009) (ordering the agency to review the entire administrative record to ensure that it is maximally publicly available); see also Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000) (Easterbrook, J.) ("What happens in the halls of government is presumptively public business.").

people who have a legitimate interest in the [public] record compiled in a legal proceeding."[90]  "[L]itigants in other similar cases have a legitimate need (and a right) to review the facts underlying a[n agency]'s decision" in order to "discern the relevance and significance of [that] decision vis-à-vis their own cases."[91]  Here, Commerce unreasonably failed to weigh the importance of completing the public record with regard to these voluntary respondents, even if the agency were correct that their subsidy rates would not be included in the all-others rate, for by doing so Commerce automatically precluded potential future interested parties from ascertaining the reasoning underlying the voluntary respondents' rates.

     Finally, Commerce's decision on remand not to expend the minimal effort required to correct the error and obtain the missing public versions of the necessary BPI was, based on the record here, clearly an unreasonable exercise of judgment.

---

[90] Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 944 (7th Cir. 1999) (Posner, C.J.).

[91] Former Emps. of Invista, 33 CIT at 1524 n.1, 657 F. Supp. 2d at 1361 n.1 (citations omitted); see also id. ("The public has a right to review a judge's rationale, not merely the outcome, in a case."); cf. In re Constr. Equip. Co., 665 F.3d 1254, 1261 (Fed. Cir. 2011) (noting that administrative agencies "have a 'quasi-judicial' flavor" that justifies the application of judicial principles to agency decision-making); Iowa League of Cities v. EPA, 711 F.3d 844, 873 (8th Cir. 2013) (noting that the procedures established by the Administrative Procedure Act "secure the values of government transparency").

Although Commerce initially saw no apparent need for the public
data, this was no longer true at the time of the remand
proceeding.  19 C.F.R. § 351.304(c)(1), which requires all BPI
to be accompanied by public versions "in sufficient detail to
permit a reasonable understanding of the substance of the
information," provides a clear and unambiguous formula for
converting proprietary numerical data into publicly available
summaries thereof: "numerical data will be considered adequately
summarized if grouped or presented in terms of indices or
figures within 10 percent of the actual figure," and "[i]f an
individual portion of the numerical data is voluminous, at least
one percent representative of that portion must be summarized."[92]
Accordingly, all that Commerce had to do to follow the statutory
prescription that individual rates be weight-averaged to arrive
at the all-others rate, without impermissibly revealing BPI, was
to send a letter to each of the voluntary respondents,
referencing the regulation and requesting that their BPI be
publicly ranged in accordance with the provided formula for
doing so, or even to simply itself apply the formula to the BPI.
Instead the agency chose to forego the statutory requirement and
distort the accuracy of its all-others rate calculation.  Thus
to the extent that Commerce had discretion to avoid enforcement

---

[92] 19 C.F.R. § 351.304(c)(1).

of the public versions requirement, the agency failed to
exercise its judgment reasonably, and therefore abused its
discretion.

      Accordingly, while Commerce is correct that it has no
*general* duty to reopen the record during remanded proceedings,[93]
the particular circumstances presented here require that, where
the necessary data is missing from the record due to Commerce's
own failure to fully administer the legal framework, it is the
agency's responsibility to go back and fix errors that are
material to the remand proceeding.  Commerce's determination to
use a simple average of the two individually-investigated
respondents' subsidy rates in this case is therefore remanded
for reconsideration.  On remand, Commerce may either reopen the
record and enforce 19 C.F.R. § 351.304(c)(1)'s requirement that
the voluntary respondents submit public versions of their BPI,
or (as AETFC suggests[94]) itself publicly range the BPI, if the
agency finds that doing so is appropriate here.

---

[93] See Def.'s Br., ECF No. 112, at 6.

[94] Pet'r's Suppl. Br., ECF Nos. 118 & 119, at 4 ("Given that
Commerce has the parties' total sales revenue and the subsidy
calculation for both domestic and export subsidies, there is
no reason that Commerce, using its inherent authority to enforce
its own regulations, cannot round and range the total sales
denominator within the regulatory plus or minus ten percent
without reopening the record and delaying this proceeding.").

**CONCLUSION**

For all of the foregoing reasons, Commerce's determination to rely solely on simple averaging when calculating the all-others rate in this case pursuant to 19 U.S.C. § 1671d(c)(5)(A)(i) is remanded for reconsideration, consistent with this opinion.  Commerce shall have until September 24, 2015, to complete and file its remand results, the parties shall have until October 9, 2015, to file any comments, and the agency shall have until October 19, 2015, to respond.

It is SO ORDERED.

                        /s/ Donald C. Pogue
                        Donald C. Pogue, Senior Judge


Dated: August 11, 2015
       New York, NY